**APAC–MISSOURI, INC., Plaintiff–Respondent,**

v.

**Gerald E. BOYER and Bonnie L. Boyer, Mainstreet Road and Asphalt, Inc., Bruce Boyer and Deborah A. Boyer, Defendants/Third–Party Plaintiffs–Appellants–Respondents,**

v.

**Mark Haas, Third–Party Defendant–Respondent/Cross–Appellant.**

Nos. SD 32290, SD 32321, SD 32322.

Missouri Court of Appeals, Southern District.

Oct. 30, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 21, 2013.

652

Scott T. Jansen, Jefferson City, MO, for Appellant/Respondent Boyer.

Mark A. Ludwig, Jefferson City, MO, for Respondent APAC.

John E. Curran, Osage Beach, MO, for Respondent/Cross Appellant Mainstreet & Haas.

DON E. BURRELL, J.

These consolidated appeals arise from a subcontractor's mechanic's lien obtained by APAC–Missouri, Inc. ("APAC"), the provider of asphalt used by Mainstreet Road & Asphalt, Inc. ("Mainstreet") to build a driveway to a residential lake property. The lot owners, the Boyers,[1] and Mark Haas, the sole owner of Mainstreet, appeal judgments entered by the trial court in favor of APAC and the Boyers after jury and bench trials. Finding no merit in any of their contentions, we affirm the judgments of the trial court.

## Background

In September 2006, Bruce contracted with Mainstreet to build the asphalt driveway for $4,303. Bruce paid Mainstreet the contracted price when the driveway was completed. The driveway ran from a subdivision road across a small part of Lot 11, across all of Lot 10, and terminated at a concrete pad on Lot 9. All of the lots across which the driveway ran were owned by one or more of the Boyers. APAC's Exhibit 6A, an aerial depiction of the area, was admitted into evidence at trial, but it was not deposited with this court.

Mainstreet obtained the asphalt it used to build the driveway from APAC on credit. Mainstreet did not pay APAC. Mr. Haas testified that "very close" to $2,000–$2,500 "worth of asphalt" Mainstreet obtained from APAC was used on the project, and APAC charged Mainstreet a "fair and reasonable value" for the asphalt.[2]

Although Bruce knew what a lien waiver was, he did not obtain one from Mainstreet as he thought he "was just dealing with one contractor at the time," and he believed that his " 'paid in full' bill" would "provide some protection."

APAC eventually filed a lien notice and statement that incorrectly identified both the lots involved and the amount owed. It then filed suit against the Boyers and Mainstreet, using the same incorrect information.[3] The Boyers filed an answer and also filed a counterclaim against APAC for slander of title. APAC, realizing its error at that point, offered to dismiss its claim against the Boyers if they would dismiss their counterclaim. The Boyers rejected the offer because Bruce wanted an apology from APAC and money damages of $27,500. Bruce came up with that damages figure using what he called "APAC math"; he multiplied his actual cost of defending APAC's suit by 5.5—the ratio by which he believed APAC's initial damages claim had exceeded its actual damages.

When the Boyers rejected APAC's settlement offer, APAC dismissed its lien as to the lots upon which no asphalt had been laid, and it amended its petition by interlineation to lower its damages request to $2,387.17. These corrective measures resulted in APAC's lien notice and statement still being defective, but this time it was to APAC's prejudice as Lot 9 was not included.

---

1. Gerald E. Boyer, Bonnie L. Boyer, Bruce M. Boyer, and Deborah A. Boyer. Because these parties all share the same surname, we will refer to Bruce Boyer by his first name; no disrespect or familiarity is intended.

2. We cannot determine the actual amount APAC charged Mainstreet for the asphalt because, as noted *infra*, the exhibits that might have allowed us to do so were not deposited with this court.

3. Other claims and cross-claims were brought by the parties and were resolved in various ways not at issue in these appeals.

In addition to its counterclaim against APAC, the Boyers filed a cross-claim for indemnification against both Mainstreet and Mr. Haas. The claim against Mr. Haas was based on a request to "pierce [Mainstreet's] corporate veil."

The parties agreed to try some of their claims to a jury and others to the court. The jury awarded APAC $1,800 against the Boyers for "the reasonable value of the asphalt placed upon the property[.]" It also found in favor of APAC on the Boyers' slander of title claim, and it found in favor of the Boyers on their claim against Mainstreet for statutory indemnification.

After the bench trial that followed, the trial court granted the Boyers a judgment against both Mainstreet and Mr. Haas for $1,800 on the indemnification claim, plus $5,271 in attorney fees. Additional facts will be discussed in the context of our analysis of the parties' claims on appeal.

### The Boyers' Appeal (SD32290)

*Point A—The effect of a separate APAC lawsuit*

In their first point, the Boyers contend the trial court erred in denying their motion for judgment notwithstanding the judgment ("JNOV motion") because "APAC impermissibly split its cause of action" when it "obtained summary judgment against Mainstreet for the same material in another case, to which the Boyers were not a party . . . and APAC failed to

obtain any judgment against Mainstreet in th[e instant] case."[4]

*Standard of Review*

As stated in *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007):

> The standard of review of denial of a JNOV is essentially the same as for review of denial of a motion for directed verdict. A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. In determining whether the evidence was sufficient to support the jury's verdict, the evidence is viewed in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict. This Court will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 456–57 (Mo. banc 2006). Accordingly, a motion for JNOV is properly granted when the motion identifies at least one element of the plaintiff's case that is not supported by the evidence.

"Whether the plaintiff made a submissible case is a question of law subject to de novo review." *D.R. Sherry Constr., Ltd. v.*

---

4. The Boyers' point does not assert a lack of jurisdiction. Despite this, the argument supporting the point maintains that "[t]he lack of a necessary party deprives the [c]ourt of jurisdiction, and any judgment of lien is thus invalid[,]" citing *Harrison v. Creason*, 238 Mo. App. 118, 176 S.W.2d 849, 850–51 (1944). In *Harrison*, the person who made the contract for materials "was not made a party to the suit to establish and enforce a lien. Consequently, the court obtained no jurisdiction of the subject matter of this suit." *Id.* at 851.

Here, Mainstreet was a party; the April 3, 2012 judgment following the jury trial granted judgment in favor of APAC against both Mainstreet and the Boyers as to Count I; and the June 1, 2012 judgment was also against Mainstreet in favor of the Boyers. For a much more current (and controlling) discussion of what actually rises to the level of a jurisdictional defect, see *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 254 (Mo. banc 2009).

*American Family Mut. Ins. Co.,* 316 S.W.3d 899, 904 (Mo. banc 2010).

### Additional facts relevant to Point A

At the close of APAC's evidence in the jury trial, the Boyers orally moved for a directed verdict on Count I "on the basis that [APAC] cannot say how much asphalt is on Lot 9 and that piece of [Lot] 10." The trial court asked if the Boyers had any written motion to file in addition to the oral motion, and counsel for the Boyers replied in the negative, stating, "Those are just oral, Your Honor." The Boyers' oral motion for directed verdict did *not* assert that the motion should be granted because of APAC's other lawsuit against Mainstreet.

Mainstreet also moved for a directed verdict at the close of APAC's case. It did base its motion on APAC having obtained a judgment against Mainstreet in another case. Counsel for APAC insisted that the other judgment was not final, and counsel for Mainstreet agreed that the other case was still pending. The Boyers did not join in Mainstreet's motion for directed verdict. The trial court denied each party's motion for directed verdict. At the close of all evidence, counsel for Mainstreet and Mr. Haas again moved for directed verdict based upon APAC's other lawsuit. Counsel for APAC and counsel for Mainstreet again argued the motion, and counsel for the Boyers again did not attempt to join in Mainstreet's motion. The trial court denied Mainstreet's motion for directed verdict at the close of all evidence.[5]

The Boyers brought their own motion for directed verdict at the close of all evidence, but it was based solely upon the theory that because APAC "didn't lien Lot 9, they may not claim the value of any asphalt on Lot 9" and "the jury will be required to speculate as to the dollar value of the asphalt on the land which is claimed for liening [sic] purposes by the petition that's been filed[.]" The Boyers' motion for directed verdict at the close of all evidence was also denied.

### Analysis

The Boyers' JNOV motion included the contention presented here in Point A: APAC had improperly split its cause of action by obtaining a judgment on the value of the asphalt in another case, and it did not obtain a judgment against Mainstreet in the instant case. However, the Boyers did not include that claim in their earlier motions for directed verdict at the close of APAC's evidence and at the close of all evidence. Those motions simply contended that the jury could only "speculate as to the dollar value of the asphalt on the land which is claimed" to be subject to the mechanic's lien because APAC did not prove the amount of asphalt used on Lot 9.

As the Western District explained in *Daniels v. Board of Curators of Lincoln Univ.,* 51 S.W.3d 1, 5–6 (Mo.App.W.D. 2001):

> A motion for judgment notwithstanding the verdict is a motion "to have judgment entered in accordance with the motion for a directed verdict." Rule 72.01(b).[6] Therefore, a sufficient motion for directed verdict is required to preserve the motion for judgment not-

---

**5.** APAC also moved for a directed verdict against Mainstreet on the grounds that Mr. Haas had admitted that the asphalt "was put on the Boyer[s] property, he has admitted it was of reasonable quality ... and he has admitted he hasn't paid for it." Counsel for Mainstreet had no objection to the motion, and the trial court directed a verdict as requested.

**6.** Unless otherwise indicated, all rule references are to Missouri Court Rules (2013). All statutory references are to RSMo 2000.

withstanding the verdict and for appeal. *Fust v. Francois,* 913 S.W.2d 38, 45 (Mo.App.1995).

An issue not raised in a motion for directed verdict may not be used to seek a judgment notwithstanding the verdict on that issue or for obtaining appellate review of the trial court's denial of judgment notwithstanding the verdict on that ground.

■ Here, the Boyers did not join in the issue when it was raised by Mainstreet, and they did not raise it independently in their own motions for directed verdict. Thus, the issue was not preserved for appellate review. Point A fails.

### Point B—The value of the asphalt

The Boyers' second point contends the trial court erred in denying their JNOV motion "because there was not substantial evidence from which the jury could determine the value of the asphalt on Lots 10 and 11, in that there was also asphalt on Lot 9" and the evidence was "insubstantial" as to the quantity of asphalt deposited on Lot 9.

The standard of review for this claim is the same as for Point A. We also note that "[w]e will not overturn a jury's verdict unless there is a complete absence of probative facts to support it." *Poloski v. Wal–Mart Stores, Inc.,* 68 S.W.3d 445, 449 (Mo.App.W.D.2001).

### Additional facts relevant to Point B

During the jury trial, APAC's construction controller, Cathy Spotts, was asked to read aloud an email (admitted into evidence as exhibit 16) from a sales manager to counsel for APAC. She read:

I have attached pictures of [the] Boyers' driveway, also the drive measures approximately 180 feet by 16 feet by four inches to six inches thick. The total amount of material could vary from 80 tons to 125 tons, depending on the thickness. The only way to get an exact quantity is to pour [sic] the drive, which [the Boyers] won't allow, I'm sure. Let me know what we need to do next.

The jury also received: APAC's exhibit 3, consisting of "APAC invoices and tickets[,]" which was admitted upon "[n]o objection" by the Boyers' counsel; the invoice from Mainstreet to the Boyers which was offered by the Boyers and received into evidence as "exhibit E"; testimony from the county Assessor regarding the presence of asphalt on Lot 9; and a record from the Assessor, admitted as APAC's exhibit 4, which showed lines for certain features of the property and included "a line for asphalt paving" on lot 9. The referenced exhibits were not deposited with this court.

Over the Boyers' objection, APAC was permitted to reopen its case to present additional evidence from Bruce concerning the amount of asphalt on Lot 9. Bruce testified that there was asphalt on Lot 9 but he was unsure "exactly how much[.]" At the close of that additional evidence, the Boyers renewed their oral motion for directed verdict on the same ground previously asserted—that the amount of asphalt placed on Lot 9 was still unclear. The trial court denied the motion, ruling that the evidence "survives a motion for directed verdict as to Count 1."

### Analysis

■ Although the Boyers claim that no substantial evidence supports the amount of asphalt at issue, they failed to deposit all of the evidence presented on that issue with this court. "When an exhibit is not deposited with this Court, 'the intendment and content of the exhibit [will be] taken as favorable to the trial court's ruling and as unfavorable to the appel-

lant.'" *Briar Rd., L.L.C. v. Lezah Stenger Homes, Inc.,* 321 S.W.3d 488, 492–93 (Mo. App.S.D.2010) (quoting *Brown v. Brown,* 14 S.W.3d 704, 708 n. 5 (Mo.App.S.D. 2000)). Thus, while we cannot check the calculations the jury might have been able to make based upon the omitted exhibits, we must presume that their content would have supported the judgment. For instance, the exhibits could have allowed the jury to derive a ratio from the value of the asphalt used in the entire project, subtract out the portion used on Lot 9, and thereby reach a supported value for the asphalt used on the portions of the driveway that were included in APAC's claim. The jury also had the aerial depiction of the area and Mr. Haas's testimony that the entire project involved "very close" to $2,000–$2,500 "worth of asphalt." Thus, we cannot say that there was a complete absence of probative evidence to support the jury's valuation. Point B is denied.

### Point C—Exclusion of evidence of APAC's credit practices

The Boyers' third point contends the trial court erred in "exclud[ing] any evidence of APAC's credit-extension practices because such evidence was probative on the question of malice for purposes of slander of title," in that the jury could have inferred from such evidence that "APAC's business practice was to knowingly ignore such risks in favor of liening [sic] property owners."

### Standard of Review

"The [trial] court has broad discretion in deciding whether to admit or to exclude evidence at trial, and we review not for the

evidence's admissibility, but for an abuse of discretion in the court's decision to exclude it." *KC Excavating & Grading, Inc. v. Crane Constr. Co.,* 141 S.W.3d 401, 407 (Mo.App.W.D.2004). We presume that the ruling was correct; "[i]t is the appellant's burden to persuade us that the [trial] court abused its discretion and that the abuse resulted in prejudice." *Id.* at 408.

### Additional facts relevant to Point C

In support of their point, the Boyers cite the following exchange that occurred when counsel for the Boyers cross-examined Mr. Haas during APAC's case:

[Counsel for the Boyers]: Can we approach for just a second, Your Honor?

(COUNSEL APPROACHED THE BENCH AND THE FOLLOWING DISCUSSION WAS HELD)

[Counsel for the Boyers]: Your Honor, there were additional questions of this witness [during direct examination] regarding his overdue payments and his assurances that he was making payments. I'm not sure why that's coming up, but since it is, I don't understand why I can't ask him about all the stop sales he was getting and about how far over his credit limit was [sic] at the same time. If it's relevant for some purpose there, this is companion testimony. I'm wondering why I got it objected to and sustained the first time, but now we're hearing more about the same issues.[7]

THE COURT: [Counsel for APAC]?

[Counsel for APAC]: There has been an argument that we delayed and de-

---

**7.** During the cross-examination of APAC's first witness, Ms. Spotts, counsel for the Boyers, asked whether Ms. Spotts was "aware that Mainstreet's credit limit was $20,000 with [APAC.]" APAC's counsel objected based on relevancy. Counsel for the Boyers re-

sponded that APAC "opened the door" by introducing "Mainstreet's unpaid invoices" and collection letters and that was "relevant to their attitude and the way they do business." The trial court sustained the objection.

layed in taking action on this and that, and that's what that's [sic] the relevancy of that. It was a couple of questions, is all it was, [sic] didn't have anything to do with his credit worthiness.

THE COURT: I think as long as you don't get into credit worthiness I'll allow some leeway because he did bring it up, but just with regard to that line of questioning.

The proceedings returned to open court without an offer of proof by the Boyers as to what the answers to those additional questions would have been if asked.

## Analysis

■ The Boyers' brief claims that the excluded evidence would have been "that Mainstreet was regularly subjected to 'stop sales' by APAC, *i.e.*, a prohibition on selling it any more material, and that those 'stop sales' were routinely overridden by APAC's service center in a different state." The support cited for this assertion is to the legal file for "part of [the] deposition transcripts, with designations provided to the parties prior to trial[.]" The record does not indicate that the referenced portions of the depositions were offered into evidence at trial or were presented to the trial court as an offer of proof.

■ "Generally, appellate courts will not review excluded evidence without a specific and definite offer of proof." *Frank v. Envtl. Sanitation Mgmt., Inc.,* 687 S.W.2d 876, 883 (Mo. banc 1985). The Boyers claim that no such offer was necessary here because the situation met the "very narrow" exception to the general rule as set forth in a line of cases where the record demonstrated that there was: 1) "a complete understanding, based on the record, of the excluded testimony"; 2) "the objection [was] to a category of evi-

dence rather than to specific testimony"; and 3) "the record . . . reveal[ed] the evidence would have helped its proponent." *Id.* at 883–84.

The Boyers contend that because deposition designations had been filed prior to trial, and the content of those designations was known, the exception applies here. The argument overlooks the fact that there is no indication in the record that the relevant content of the specific designations was brought to the attention of the trial court when the Boyers wanted the court to admit that evidence. One of the purposes of an offer of proof is "to educate the trial judge on the admissibility of the evidence with the hope that he or she will reconsider[.]" *LaFevers v. Clothiaux,* 403 S.W.3d 653, 657 (Mo.App.S.D.2012). Unlike *LaFevers,* where the "designated deposition testimony" was offered at a bench conference as an offer of proof, the trial court here was *not* presented with the deposition designations when asked to rule on the admissibility of such evidence. *Id.*

The Boyers cite *Eltiste v. Ford Motor Co.,* 167 S.W.3d 742 (Mo.App.E.D.2005), in their reply brief as a similar case wherein an offer of proof was not required, but, in that case, the proponent-plaintiff's response to the defendant's "omnibus" motion *in limine* indicated, generally, the evidence in question. *Id.* at 749. Even if we were to assume that *Eltiste* was applicable here, while the Boyers insist that evidence of APAC's credit practices "would have helped [them] demonstrate APAC's malice on the slander of title claim[,]" they do not explain how the jury could have reasonably inferred *malice* from such evidence.

In other words, the third element necessary to qualify for an exception to the requirement of an offer of proof has not been met because it is not clear how the evidence would have helped the Boyers.

*See id.* at 884. The Boyers acknowledge that the "core premise of [their slander of title] claim was that APAC had included property nowhere near the driveway project, and had claimed a value of asphalt far in excess of what was actually used on the project." The Boyers do not show how APAC's credit practices resulted in its allegedly malicious miscalculation of the asphalt used on the project or a description of property that included lots on which no asphalt was used. Point C fails.

### Point D—Limit of attorney fees award against Mainstreet

The Boyers' final point claims the trial court erred in denying the new trial motion in regard to their request for attorney fees against Mainstreet "because Mainstreet waived any right to assert that the Boyers should have accepted APAC's offer of mutual dismissal" when Mainstreet had notice but rejected "its statutory duty to defend the Boyers," thereby "abandon[ing] any right to control the manner of the Boyers' defense or complain that it would have done something differently."

### Standard of Review

■ "The standard of review for an order denying a motion for new trial is abuse of discretion." *Hargis v. Lankford,* 372 S.W.3d 82, 84 (Mo.App.S.D.2012). "The denial of a new trial is an abuse of discretion when it is based on findings not substantially supported by the record." *Id.*

### Additional facts relevant to Point D

The Boyers' exhibits L–1–A, L–2–A, and L–3–A were admitted at trial concerning attorney fees, but those exhibits have not been deposited with this court. The trial court found the proper amount of attorney fees to award "to be $5,271.00" based on the following reasoning:

> [The Boyers] could have resolved the potential for lien liability pending against them by APAC, for which [Mainstreet] had a duty to the Boyers to defend, by dismissing their [c]ounterclaim for slander of title against APAC and APAC dismissing its lien suit against the Boyers at that time. In so doing, the Boyers could have still preserved their pending claim against [Mainstreet] for statutory indemnity and sought reimbursement of the attorney fees they had incurred through January 21, 2008[8] from [Mainstreet]. However, the Boyers rejected this option and chose, rather, to pursue their claim against APAC for slander of title. This Court finds that [Mainstreet] owed no further duty to [the] Boyers to pay for the Boyers['] attorney fees incurred in pursuance of the slander of title action after January 21, 2008, when [the Boyers] could have resolved the lien suit. Therefore, this Court finds that the Boyers are not entitled to the attorney fees which they incurred after January 21, 2008.

### Standard of Review

■■ The trial court is considered an expert in awarding attorney fees. *Travis v. Travis,* 63 S.W.3d 296, 300 (Mo.App.E.D. 2001). We review such an award for abuse of discretion. *Russell v. Russell,* 210 S.W.3d 191, 199 (Mo. banc 2007). We will find that the trial court abused its discretion only if its ruling "was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of

---

**8.** During the trial, Ms. Spotts testified that a letter from the Boyers' counsel dated January 18, 2008 was received rejecting APAC's settlement offer. As the Boyer's exhibits concerning attorney fees were not deposited, we cannot tell whether January 21, 2008 was the first date of attorney services that followed the January 18th letter.

justice." *Lueckenotte v. Lueckenotte,* 34 S.W.3d 387, 399 (Mo. banc 2001).

### Analysis

Section 429.140 provides:

In all cases where a lien shall be filed under the provisions of sections 429.010 to 429.340 by any person other than a contractor, it shall be the duty of the contractor to defend any action brought thereupon, *at his own expense;* and, during the pendency of such action, the owner may withhold from the contractor the amount of money for which such lien shall be filed; and in case of judgment against the owner or his property upon the lien, he shall be entitled to deduct from any amount due by him to the contractor the amount of such judgment and costs, and, if he shall have settled with the contractor in full, shall be entitled to recover back from the contractor any amount so paid by the owner for which the contractor was originally the party liable.

(Emphasis added.)

 The term "expense" is not defined in the statute, but it makes no specific allowance for expenses associated with the affirmative prosecution of an action (like slander of title) as opposed to the defense of an action brought on a mechanic's lien. "[T]he general rule in Missouri is that attorneys' fees are only recoverable when a statute specifically authorizes recovery or when attorneys' fees are provided for by contract." *Essex Contracting, Inc. v. Jefferson Cnty.,* 277 S.W.3d 647, 657 (Mo. banc 2009). Thus, the trial court was without authority to award attorney fees for services other than the defense of the mechanic's lien.

The Boyers insist in their reply brief that they are not seeking attorney fees for the prosecution of their slander of title action; their argument is that "Mainstreet waived any right to complain about *when* [the] defense [of mechanic's lien] costs should have ended."

 Given the trial court's expertise "on the necessity, reasonableness, and value of attorney's fees[,]" *Travis,* 174 S.W.3d at 71, its "decision regarding attorney's fees is presumptively correct, and we will reverse its award only upon the finding that it has abused its discretion." *Id.* The question is whether the trial court's decision was illogical, arbitrary, and unreasonable. *See Weissenbach v. Deeken,* 291 S.W.3d 361, 362 (Mo.App.E.D.2009) and *Travis,* 174 S.W.3d at 71. Whether Mainstreet's failure to defend the mechanic's lien suit somehow put it on the hook for what would otherwise be unreasonable attorney fees is not.

Here, the trial court explained its rationale for limiting attorney fees to those incurred before the "Boyers could have resolved the potential for lien liability pending against them by APAC" by accepting APAC's offer of mutual dismissal. The trial court's reasoning that the expenses incurred in defending the mechanic's lien could have stopped at that point was logical, based on the facts in evidence, and reasonable; the polar opposite of an abuse of discretion. Point D is denied.

### Mr. Haas's Appeal (SD32322)

#### Point A—Piercing the corporate veil

Mr. Haas asserts in his cross-appeal that the "evidence failed to establish the necessary elements to pierce the corporate veil" because the "evidence did not establish that [he] used control of [Mainstreet] to commit a fraud or violate a legal duty or that any such violation was the proximate cause of [the Boyers'] injury[.]"

*Standard of Review*

We will sustain the trial court's judgment in a bench-tried case "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Rule 84.13(d); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

*Additional facts relevant to Point A*

Mr. Haas testified during the bench trial that he was Mainstreet's president, its sole officer, and its only shareholder from the time he purchased it in 2002 until it "was dissolved by the Missouri Secretary of State in November of 2007[.]" The corporation had no board of directors during his ownership of it. No annual meetings were held, no by-laws existed, and Mr. Haas "never executed a single written consent in lieu of a meeting[.]" Mr. Haas agreed that he "made all the decisions about the corporation's business practices" and "all the decisions about the corporation's policy[.]" He testified that at the time the Boyer's driveway was poured, Mainstreet "was about $80,000 behind on its payments to APAC for asphalt[.]" Mr. Haas "made the decisions for [Mainstreet] about what bills" would be paid. He agreed that the Boyers had asked Mainstreet to defend them. Although Mainstreet denied that request, Mainstreet did retain counsel to defend Mr. Haas.

The trial court found that "[Mr.] Haas controlled all aspects of the operation of [Mainstreet] such that [Mainstreet] had no mind or will of its own" and that this control caused Mainstreet to breach its duty "to defend the Mechanic's Lien action brought by APAC against the Boyers[.]" The trial court found that Mr. Haas's explanation that Mainstreet "did not defend the Boyers" because "the corporation did not have money" was not credible. The trial court reasoned:

> The corporation had sufficient funds with which to hire counsel to defend the corporation but yet failed to defend the Boyers when demand was made.... The reasonable [in]ference drawn from the evidence presented at trial is that this decision was made by [Mr.] Haas and [Mr.] Haas alone and is in clear violation of the statutory duty which [Mainstreet] owed to the Boyers.

As a result, the judgment at issue awarded $7,071, plus costs, in favor of the Boyers against both Mainstreet and Mr. Haas.

*Analysis*

 Piercing the corporate veil has three elements:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Collet v. American Nat'l Stores, Inc.*, 708 S.W.2d 273, 284 (Mo.App.E.D.1986).

 "[A]ctual fraud is not necessary for a court to hold shareholders liable for corporate debts." *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 41 (Mo. banc 1999). "Other conduct that may justify piercing the cor-

porate veil includes the violation of statutory duties and undercapitalization." *Id.*

■ Here, Mr. Haas's first point challenges the evidence supporting the second and third elements. In support of those elements, the trial court had Mr. Haas's admissions that he "made all the decisions about the corporation's business practices" and "all the decisions about the corporation's policy[.]" Mr. Haas also agreed that Mainstreet had been asked to defend the Boyers, and that it did not do so even though Mainstreet did hire counsel to defend him.

Mr. Haas ignores our standard of review by focusing on the parts of his testimony that he believes are favorable to him. In reviewing whether substantial evidence supported the verdict, we must view the evidence "in the light most favorable to the result reached by the [fact-finder], giving the [proponent of the judgment] the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that [judgment]." *Clevenger,* 237 S.W.3d at 590. We will reverse only if "there is a complete absence of probative fact to support the [fact-finder's] conclusion." *Id.*

Mr. Haas notes that the trial court did not find him to be a credible witness and argues that "a court is constrained under the standard of review to determine whether the record, other than the testimony of the individual determined to be non-credible [sic], shows that the trial court's judgment was supported by substantial evidence and not against the weight of the evidence[,]" citing *In re Baby Girl P.,* 188 S.W.3d 6, 10 (Mo.App. W.D.2006). This argument ignores the fact that the trial judge was free to find Mr. Haas's testimony credible on some matters and not on others. *See McCormick v. Cupp,* 106 S.W.3d 563, 569 (Mo. App.W.D.2003) ("The fact-finder is free to

believe all, none, or some of a witness's testimony").

Here, the trial court expressly found that Mr. Haas's "contention at trial that the reason that [Mainstreet] did not defend the Boyers from the Mechanic's lien action brought by APAC was that the corporation did not have money is not credible." The trial court did not state that Mr. Haas lacked credibility as to every item of testimony he provided. "We defer to the trial court on factual issues[.]" *Wood v. Smith,* 359 S.W.3d 526, 529 (Mo.App.E.D. 2012). Thus, we defer to the trial court's factual findings, based on Mr. Haas's testimony and evidence regarding attorney fees, that Mainstreet "had no mind or will of its own"; Mr. Haas used Mainstreet "to breach its statutory duty owed to [the Boyers] to defend the Mechanic's Lien action"; and "the total control of [Mainstreet] by [Mr. Haas] and subsequent breach of the statutory duty owed by [Mainstreet] ... caused the Boyers to sustain damages herein in the sum of $7,071.00." Point A is denied.

### Point B—Weight of the evidence

Mr. Haas maintains in this point that the "judgment was against the weight of the evidence in that there was no substantial evidence to support a finding that" he controlled Mainstreet "to commit a fraud or violate a legal duty" or that such a "breach of duty was the proximate cause of the injury to [the Boyers]."

### Standard of Review

The structure of point B makes it difficult to discern Mr. Haas's precise contention because "an against-the-weight-of-the-evidence challenge presupposes the threshold issue of the existence of substantial evidence supporting a proposition necessary to sustain a judgment[.]" *Houston v. Crider,* 317 S.W.3d 178, 186 (Mo.App.

S.D.2010). We presume that Mr. Haas intends to make an against-the-weight-of-the-evidence challenge here, given that his other point claimed that the judgment was not supported by substantial evidence.

"A court will set aside a judgment as 'against the weight of the evidence' only when it has a 'firm belief that the judgment is wrong.' " *Id.* (quoting *Gifford v. Geosling*, 951 S.W.2d 641, 643 (Mo. App.W.D.1997)). An against-the-weight-of-the-evidence challenge contests the probative value of the evidence in favor of the judgment. *Id.* "[C]onsideration of probative value necessarily involves some consideration of evidence contrary to the judgment, [but] we nevertheless 'defer to the trial court as the finder of fact in our determination as to whether ... that judgment is against the weight of the evidence.' " *Id.* (quoting *Wildflower Cmty. Ass'n v. Rinderknecht*, 25 S.W.3d 530, 536 (Mo.App.W.D.2000)) (internal quotation omitted).

*Analysis*

Mr. Haas's argument in support of the point begins in a similar fashion to his argument in support of Point A, so we will not repeat that portion of our analysis here. The trial court was not required to disbelieve every bit of testimony from Mr. Haas, and substantial evidence supported the trial court's judgment.

In addition to his Point A arguments, Mr. Haas also takes issue with the trial court's rejection of his "lack of funds" excuse for failing to provide the Boyers with a defense because "[n]o inquiry was made by [the Boyers] or the trial court [about] whether counsel for [Mainstreet] had been paid for its representation" and counsel could have answered that question in the negative.

"It is not the trial court's function to help counsel try their cases[,]" *State v.*

*Brown*, 996 S.W.2d 719, 733 (Mo.App.W.D. 1999), and we "will not accept counsel's statements as a substitute for record proof." *McDonald v. Thompson*, 35 S.W.3d 906, 909 (Mo.App.S.D.2001). In any event, the claim is irrelevant because the elements for piercing the corporate veil do not require proof of an ill motive in all cases. The second element contains alternative forms of conduct, and the alternative applicable in this case is that the control of the corporation "must have been used by the corporation ... to perpetrate the violation of a statutory ... duty[.]" *Collet*, 708 S.W.2d at 284.

Mr. Haas identifies certain items of evidence apart from his own testimony: Mainstreet's 2006 tax return, evidence that Mainstreet was administratively dissolved, an accountant's testimony to the effect that Mainstreet was "was sufficiently capitalized," and documents regarding the disposition of Mainstreet's assets. But he does not explain how these items were favorable to him or how they had a greater probative value than the evidence supporting the trial court's judgment. Mr. Haas does not "demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in th[e] proposition [necessary to the judgment]." *Houston*, 317 S.W.3d at 187. As a result, he has failed to make a successful against-the-weight-of-the-evidence challenge. *Id.* Point B is denied.

The judgments dated April 3, 2012 and June 1, 2012 are affirmed.

JEFFREY W. BATES, P.J. and MARY W. SHEFFIELD, J., CONCURS.