

# In the
# Missouri Court of Appeals
# Western District

IN RE THE MATTER OF B.S.-S.,
A MINOR CHILD BY HIS NEXT
FRIEND, GABRIEL S. SNOWDEN, AND
GABRIEL S. SNOWDEN,
INDIVIDUALLY,

                **Respondent,**

v.

REBECCA ANN CALLAHAN,

                **Appellant.**

**WD83294**

**OPINION FILED:**

**June 30, 2020**

**Appeal from the Circuit Court of Clay County, Missouri
The Honorable Timothy Jon Flook, Judge**

**Before Division One:
Lisa White Hardwick, P.J., Cynthia L. Martin, and Thomas N. Chapman, JJ.**

Rebecca Callahan appeals the judgment of the Circuit Court of Clay County, Missouri, granting Gabriel Snowden's "Motion to Modify Judgment Declaring Paternity, Parenting Time and Child Support." She argues that the circuit court erred in striking her pleadings and prohibiting her from offering evidence at the modification trial. She argues further that the circuit court erred in admitting certain medical records as exhibits at the trial. Finding no error, we affirm.

### Facts & Procedural Background

B.S.-S. is the minor child of Benjamin Snowden (Father) and Rebecca Callahan (Mother). In January 2017, the Circuit Court of Clay County, Missouri entered a Judgment of Paternity, Parenting Time and Child Support (original judgment),[1] declaring Father to be the natural parent of B.S.-S. and granting joint legal and physical custody of the minor child to Father and Mother. Father was also ordered to pay child support in the amount of $475.00 per month and to provide health insurance for B.S.-S.

In March 2018, Father filed a "Motion to Modify Judgment Declaring Paternity, Parenting Time and Child Support." In his motion, he alleged that Mother had refused to allow Father his court-ordered parenting time, that Mother was a drug user and was residing in a drug house, and that Mother had falsely accused him of abusing B.S.-S. He requested sole legal and physical custody of the parties' child and asked the court to order Mother to pay child support. The same day, Father also filed a Motion for Family Access Order, indicating that Mother had persistently refused to allow him parenting time in contravention of the original judgment.[2] In May 2018, Mother filed a Motion for Temporary Custody and Supervised Visitation Pendente Lite, an answer to Father's modification motion as well as a counter-motion to modify, and a motion for appointment of a guardian ad litem (GAL). In her counter-motion to modify, Mother alleged that Father had been investigated for abusing B.S.-S., that he had made only minimal

---

[1] The original judgment is not included in the record on appeal.

[2] Father's Motion for Family Access Order indicates that he was to have parenting time with the parties' child on the first, third, and fourth Saturday of the month until the following Tuesday; on the second and fifth (if applicable) Sunday of the month until the following Tuesday; and on holidays in alternating years.

2

efforts to see the child, and requested sole legal and physical custody. The circuit court subsequently appointed a GAL for B.S.-S.

Citing concerns about Mother's past history with illegal drug use, Father filed a motion seeking an order from the court requiring her to undergo drug testing in August 2018. He alleged that in coordination with the GAL, Mother had previously agreed to submit herself to testing without an order from the circuit court but had failed to do so. The circuit court entered an order requiring Mother to "present herself to Test Smartly within 48 hours of this Order for a 9 panel nail testing for illegal drugs, prescription drugs, alcohol and controlled substances." The order further provided that if Mother failed to present herself for drug testing, the circuit court would "presume that the test results would be adverse to her."

In September 2018, Father filed a motion for sanctions and to strike Mother's pleadings due to her failure to comply with the circuit court's order for drug testing. In the motion, Father alleged that Mother had appeared at the Test Smartly facility for testing but that a sample could not be taken at that time because her fingernails and toenails were not of sufficient length. Father contended further that Mother had not attempted to arrange another test after her initial appearance at the testing facility. Father argued that Mother's failure to comply with the order for drug testing had hindered his trial preparation and asked the court to strike Mother's pleadings and preclude her from presenting evidence at the modification trial.

The case proceeded to trial in January 2019. At trial, the circuit court began by taking up Father's motion for sanctions. The GAL joined in Father's motion to strike Mother's pleadings. In support of his motion, Father presented the testimony of Covet Padara, the coordinator of the Test Smartly facility. Padara testified that when Mother initially presented to the facility, her fingernails and toenails were not long enough to take a sample. Padara testified that he

3

instructed Mother to return when her nails had grown and were not painted. Mother

subsequently returned to the laboratory, but her nails were once again too short to conduct the

test and they were also painted despite Padara's instruction. Mother was not present for Padara's

testimony and the transcript reflects that she arrived late for trial, immediately after her counsel

finished arguing against the motion. After receiving Padara's testimony and hearing the

arguments of counsel, the circuit court ruled as follows:

> THE COURT: All right, if there's nothing further, I'm going to rule. Court has taken up the motion for sanctions. The Court does rule on this motion pursuant to the rule on this motion pursuant to Rule 67.03, Rules of Civil Procedures. The Court Order to appear for drug testing is a very serious matter. It's not only a matter of discovery; it's a matter of respecting the Court Order, especially when something as serious as the best interest of a trial [sic] may be involved. Failure to do so over a long period of time based on the evidence that I have, that failure to do so was without just cause. The Court hereby grants the Motion for Sanctions. [Mother's] pleadings are stricken. And adverse influence [sic] may be drawn from the failure to submit to drug testing within compliance of the Court Order, and [Mother] is prohibited from introducing evidence at trial.
> With that, [Mother] is capable of - - counsel may cross examine and make objections on evidentiary matters in [Father's] case. But outside of that, the Court will prohibit introducing evidence in her case-in-chief and on a claim defense [sic].

Father then testified in support of his motion to modify. He stated that although the

circuit court had awarded the parties joint legal custody, he had not been consulted regarding

important medical, educational, and childcare decisions involving B.S.-S. Father also testified

regarding Mother's medical records and records pertaining to an investigation conducted by the

Clay County Children's Division.[3] These records indicated that Mother was using drugs during

---

[3] Father, Father's counsel, Mother's counsel, the GAL, and the Court refer to an investigation and records of "DFS" and "Children's Division." They use these terms for said state agency, without explanation or distinction, and interchangeably. As pointed out in our discussion of Point II of Mother's appeal, Mother failed to include these exhibits in her record on appeal. We interpret these references to be to the Children's Division of the Missouri Department of Social Services, and will refer to that agency as "Children's Division."

4

and after she had been pregnant with B.S.-S. Father also indicated that the Children's Division investigated an allegation of abuse that Mother had made against Father concerning bruises she had noticed on B.S.-S.'s backside, legs, and head. Father was later notified that the Children's Division terminated the investigation after concluding that the allegation was "unsubstantiated."

Father stated that the original judgment provided for a fifty-fifty parenting time schedule. A series of text messages between Father and Mother were admitted as exhibits at the modification trial. Father's testimony indicated that between November 2017 and February 2018, he repeatedly sent text messages to Mother to arrange to pick up B.S.-S. for Father's court-ordered parenting time, but that Mother failed to respond. Father also learned that Mother had relocated to an unknown residence without telling him. He hired two private investigators to find out where Mother was residing with B.S.-S., but they were unable to locate her. Father then sent a letter to Mother's last known address with a notation reading "return service requested." The letter was returned to him with Mother's then-current address. After discovering her new address, he filed and served Mother with a Motion for Family Access Order. Mother continued to prevent Father from seeing the parties' child until October 2018, when Father sought a temporary restraining order asking the court to place B.S.-S. in his physical custody and prevent Mother from having any unsupervised contact with the child until "further Order of the Court[.]" At this time, Father learned that Mother had been evicted from her apartment and that she had again relocated with the parties' child without informing him. Upon filing for a temporary

restraining order, Father was granted a supervised visit with B.S.-S. after nearly fourteen months of being denied parenting time by Mother.[4]

Father presented his proposed parenting plan as an exhibit at the modification trial. In his plan, he requested that he be granted sole legal and physical custody of B.S.-S. and proposed that Mother be allowed supervised visitation for two hours every week. He sought an order designating his address as the child's residential address for educational and mailing purposes. The GAL submitted a proposed parenting plan as well. In her plan, the GAL proposed that Father be awarded sole legal and physical custody of the parties' child and that Mother be granted supervised visitation with B.S.-S. for four hours on alternating Sundays and every Wednesday for three hours. Both plans provided parenting time for Mother during holidays in alternating years. Father also submitted a Form 14, requesting that Mother be ordered to pay child support in the amount of $454.00 per month. Father asked that that court order him to continue to provide B.S.-S. with health insurance (as was the arrangement under the original judgment).

In March 2019, the circuit court entered its judgment of modification. In the judgment, the circuit court began by addressing Mother's drug use and her failure to comply with its order for drug testing. The court observed that Mother was fully apprised that her failure to submit herself for testing would result in an adverse inference that she would have tested positive for drugs; that Mother knew her alleged drug use was a core issue affecting the best interests of B.S.-S.; and that Mother's violation of the order was "without good cause or excuse" and done with a

---

[4] Father also testified that his daughter (B.S.-S.'s half-sister) and B.S.-S. have an extremely close relationship and that the siblings did not see each other at all during the nearly fourteen months that Mother blocked Father's parenting time.

"contumacious and deliberate disregard for the authority of the Court." The court found that Mother's disregard of the drug testing order denied Father an opportunity to obtain full and complete discovery and to prepare for the modification trial. An adverse inference was drawn against Mother regarding her alleged drug use.

The circuit court also found that a substantial change in circumstances had occurred since entry of the original judgment in that, among other things, Mother failed to maintain a stable and permanent home for B.S.-S.[5] Additionally, Mother denied Father custody and parenting time with the parties' child for a significant period of time, Mother often arrived late to drop off the child for Father's parenting time, and Mother changed residences without providing notice to Father. The court found that Father had not been allowed to participate in medical and educational decisions affecting the child, even though the parties had been granted joint legal custody under the original judgment. The court also observed that Mother alleged Father had physically abused B.S.-S., that Father credibly denied the allegation at trial, and that a Children's Division investigation concluded the allegation was unsubstantiated. The court determined that Mother had used the Children's Division investigation to block Father from exercising his court-ordered parenting time. The court also concluded that Mother was a drug user who had tested positive for controlled substances according to Children's Division records and that her failure to comply with the court-ordered testing indicated that she was still abusing drugs.

---

[5] In support of this finding, the circuit court noted Father's testimony that when he finally located Mother's residence, he found her outside smoking a cigarette at 4:00 a.m. while B.S.-S. was inside sitting on a couch (apparently still awake) with two individuals whom Father did not recognize. The court also cited Father's testimony that he drove by Mother's former residence (after she had been evicted) and discovered B.S.-S.'s toys and other belongings on the curb by a dumpster.

After considering the statutory factors set forth in § 452.375.2 RSMo 2016, the circuit court determined that it was in the best interests of B.S.-S. to award Father sole legal and physical custody and to designate his address as the child's residential address for educational and mailing purposes. The circuit court adopted the GAL's proposed parenting plan, providing Mother with supervised parenting time for four hours on alternating Sundays and three hours every Wednesday (as well as parenting time during holidays in alternating years). With regard to child support, the court accepted Father's "Exhibit 39," which set forth his Form 14 calculation requiring Mother to pay monthly child support in the amount of $454.00.

Mother filed a "Motion to Vacate, Modify or Amend Judgment or in the Alternative For New Trial" in April 2019. The circuit court did not rule on Mother's post-trial motion within 90 days of its filing, and the motion was therefore overruled as a matter of law pursuant to Rule 78.06. This appeal follows.

## *Discussion*

As in any bench-tried case, our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. 1976). *See Frawley v. Frawley*, 597 S.W.3d 742, 749 (Mo. App. W.D. 2020). "[W]e must affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id*. (citation and internal quotation marks omitted). We construe the evidence and all reasonable inferences in the light most favorable to the circuit court's judgment and disregard all contrary evidence and inferences. *Id*. Additionally, we defer to the circuit court's credibility determinations, recognizing that it "may believe or disbelieve all, part, or none of the testimony of any witnesses." *Id*. (citation omitted).

8

In her first point on appeal, Mother asserts that the circuit court erred in entering an order striking her pleadings and precluding her from presenting evidence as a sanction for failing to comply with the court's order for drug testing. "We will not reverse a trial court's sanctions unless they reflect an abuse of discretion." *Doss v. Brown*, 419 S.W.3d 784, 789 (Mo. App. W.D. 2012), as modified (Jan. 20, 2013). "This standard applies both to a determination to strike pleadings and to a determination to deny the right to present witnesses." *Goodsell v. Noland*, 540 S.W.3d 394, 403 (Mo. App. W.D. 2018) (citation omitted). "An evidentiary ruling is an abuse of discretion only if it is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Frawley*, 597 S.W.3d at 752 (citation omitted). "If reasonable persons may differ as to the propriety of an action taken by the trial court, then there was no abuse of discretion." *State v. Quick*, 334 S.W.3d 603, 609 (Mo. App. W.D. 2011).

Missouri circuit courts have authority to order a party to a civil action to submit to a physical examination (in this case, a drug test) under Rule 60.01(a)[6]:

> (1) In an action in which the mental condition, physical condition, or blood relationship of a party, or of an agent or a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party (i) to submit to physical, mental, or blood examinations by physicians or other appropriate licensed health care providers or (ii) to produce for such examinations such party's agent or the person in such party's custody or legal control.
>
> …
>
> (3) Any order under this Rule 60.01(a) may be made only on motion for good cause shown, upon notice to the person against whom the order is sought and to all other parties. Such order shall specify the time, place, manner, conditions, scope of, and identity of each person conducting the examination or evaluation.
> …

---

[6] Rule references are to the Missouri Court Rules (2018).

Rule 61.01(e) authorizes the circuit court to impose specific sanctions when a party fails to appear for an ordered physical examination:

> **(e) Failure to Appear for Physical Examination.** If a party fails to obey an order directing a physical or mental or blood examination under Rule 60.01, the court may, upon motion and reasonable notice to the other parties and all persons affected thereby, make such orders in regard to the failure as are just, and among others, it may take any action authorized under Rules 61.01(d)(1), (2), and (4). …

Finally, Rule 61.01(d)(1) allows the circuit court to "[e]nter an order … prohibiting the disobedient party from introducing designated matters in evidence," while (d)(2) allows the court to strike the disobedient party's pleadings as a sanction for failing to comply with an order to appear for a physical examination.

Here, the circuit court struck Mother's pleadings and prohibited her from presenting evidence at the modification hearing. As best we can tell, Mother's argument appears to be that the court's ruling was erroneous because (1) the decision to strike her pleadings and preclude her from presenting evidence was disproportionately severe when compared with the discovery violation, and (2) it deprived the court of necessary evidence pertaining to the best interests of the parties' child.[7]

---

[7] Mother also seems to argue that by simply appearing at the testing facility, she did in fact comply with the circuit court's drug-testing order:

> [Mother] was required to appear at the specific facility and present herself for a sample. The record is devoid of any evidence that [Mother] was ordered to do any more than that. The record does support through substantial evidence that [Mother] in fact did appear not once but twice. While [Father] can complain that [Mother] "cut" her nails to [sic] short or somehow prevented the test is irrelevant to the terms of the order.

We find this argument entirely unpersuasive. The drug testing order required Mother to appear at the Test Smartly facility "for a 9 panel nail testing for illegal drugs, prescription drugs, alcohol and controlled substances." The circuit court entered the drug testing order so that Father could obtain discoverable information pertaining to Mother's suspected drug use. Mother was therefore required to appear at the facility with her nails in a condition that an adequate sample could be taken for testing. Even if the order does not include express language to that effect, the requirement is clearly implicit in its terms. *Bishop v. Heartland Chevrolet, Inc.*, 152 S.W.3d 893, 896 (Mo. App. W.D. 2005) (indicating that a trial court's order includes that which is "clearly implicit" therein).

In *Whitworth v. Whitworth*, the wife filed a Petition for Dissolution of Marriage alleging that the marriage was irretrievably broken. 878 S.W.2d 479, 480 (Mo. App. W.D. 1994). The husband answered, denying that the marriage was irretrievably broken and asking the circuit court to dismiss the wife's petition and order the parties to participate in marriage counseling. *Id*. at 481. The wife then served the husband with interrogatories, seeking (among other things) information pertaining to his income and expenses. *Id*. For several months, the husband failed to return answers to these interrogatories, and the wife filed a motion to compel discovery which the court granted. *Id*. The husband continued to ignore the wife's discovery requests, and the wife moved the court (under Rule 61.01) to sanction the husband by striking his Answer and entering a default judgment against him. *Id*. The court granted the motion and a hearing on the default judgment was held, which resulted in a judgment dissolving the parties' marriage. *Id*.

On appeal, the husband complained that the circuit court's order striking his pleadings was "extreme" and "unjust." *Id*. This Court observed that several attempts were made to obtain the husband's answers to interrogatories, "but to no avail." *Id*. at 482. The Court concluded that the husband had only himself to blame for the striking of his pleadings and the entry of a default judgment:

> By his inaction and his failure to make himself available, Husband has demonstrated a deliberate disregard for the authority of the court. The trial court was within its discretion in striking Husband's Answer and rendering judgment by default. … The court's imposition of sanctions against Husband in striking his Answer and not allowing him to testify and present evidence was solely the result of Husband's evasive behavior and his failure to cooperate with a direct court order, and Husband's complaint on appeal is without merit.

*Id*. at 482-83.

---

Accordingly, Mother thwarted the facility's efforts to take a nail sample for testing on two occasions and thereby violated the circuit court's drug testing order.

11

Similarly, in *Doss* the mother sought modification of the parties' existing custody and child support judgment, as well as emancipation of the parties' child. 419 S.W.3d at 786. The father responded, asking the circuit court to deny her requests. *Id*. The father failed for several months to respond to the mother's interrogatories and requests for documents. *Id*. at 788. The mother moved to compel discovery, and the circuit court granted the motion. *Id*. at 789. When the father still failed to respond, the mother filed a motion for sanctions. *Id*. At the pretrial conference, the circuit court entered a scheduling order requiring the parties to submit all outstanding discovery within two weeks, to update discovery responses as appropriate, and to complete all remaining discovery by a later date. *Id*. The court also ordered the parties to attend mediation. *Id*. When the father failed to comply with the scheduling order or attend mediation, the circuit court entered an order striking his pleadings and prohibiting him from presenting any defense to the mother's claims. *Id*.

On appeal, the husband contended that the circuit court abused its discretion by striking his pleadings in that "the failure to use less drastic sanctions deprived the court of information necessary to determine the children's best interests." *Id*. at 788. This Court began its analysis by noting that a circuit "court's choice as to which sanction promotes the purpose of discovery is a matter of its discretion." *Id*. at 789. We noted further that "[t]he striking of a party's pleadings is an appropriate sanction when the party's failure to respond to pretrial discovery orders reflects a contumacious and deliberate disregard for the trial court's authority." *Id*. at 790 (citation and internal quotation marks omitted). Applying these principles to the father's actions, we found that he had deliberately disregarded the circuit court's authority by refusing to supplement his discovery responses and attend mediation despite a specific instruction from the court that he do so. *Id*. Thus, we held that the circuit court did not abuse its discretion when it struck the father's

12

pleadings and precluded him from presenting a defense. *Id*. We further observed that the circuit court was able to fulfill its statutory duties with regard to the mother's requested "modifications and emancipation" based on the evidence presented by the mother alone. *Id*.

We find the facts involved in the instant case analogous to those at issue in *Whitworth* and *Doss*. In this matter, Mother tested positive for amphetamines both before and after she gave birth to B.S.-S. [8] Father's testimony at the modification trial indicated that Mother had tested positive for amphetamines in March 2015, immediately after giving birth to B.S.-S. Records submitted at trial indicated that Mother had been directed to undergo a urinalysis screening as a result of a Children's Division investigation involving suspected drug use during her pregnancy. In an apparent effort to evade such drug testing, on one occasion Mother dropped her urine sample into the toilet when being tested.

In his motion for drug testing, Father alleged that Mother had agreed to submit herself for drug testing without a formal order from the court in July 2018. Consequently, Father submitted payment information for Mother to undergo testing at Test Smartly later in the month. By August 2018, Mother had still not appeared at the facility, and Father thus filed a formal motion seeking an order from the court that she undergo nail follicle testing. The court entered the requested order twelve days later, clearly advising Mother that her failure to comply would result in the application of an adverse inference that she would have tested positive for drugs. Mother did appear at the facility, but her finger and toenails were not of sufficient length to take a

---

[8] This evidence is derived from Father's testimony at the modification trial. It appears from the transcript that Father was reading from Mother's medical records as well as documents pertaining to a Children's Division investigation. These documents were admitted as exhibits at trial but (as will be set forth more fully below) are not included in the record on appeal. "When an exhibit is not deposited with this Court, 'the intendment and content of the exhibit [will be] taken as favorable to the trial court's ruling and as unfavorable to the appellant.'" *APAC-Missouri, Inc. v. Boyer*, 420 S.W.3d 651, 657-58 (Mo. App. S.D. 2013) (citation omitted).

sample. The facility coordinator advised her to return at a later date when her nails had grown out and were not polished. Mother then returned in the fall of 2018, but her nails were once again too short and had been polished. At the time of trial in January 2019, Mother had not made any further arrangements with the Test Smartly facility to undergo the court-ordered nail testing.[9]

Mother complains that the sanctions order required the court to assess the best interests of B.S.-S. "with literally only half the case presented." Like the *Doss* Court, we would note that Father's testimony and exhibits furnished the circuit court with ample evidence to evaluate the best interests of the parties' child. Indeed, the circuit court made highly detailed findings with respect to the best interest factors enumerated in § 452.375.2. In addition, the circuit court appointed a GAL for B.S.-S., whose role was to serve as "the court's investigative agent, charged with the same ultimate standard that must ultimately govern the court's decision—i.e., the 'best interests of the child.'" *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 384 (Mo. App. E.D. 1993); *see also McCreary v. McCreary*, 954 S.W.2d 433, 448 (Mo. App. W.D. 1997) ("As their representative, the guardian ad litem is to stand in the shoes of the children and weigh the factors as they would weigh them if their judgment was mature."). In this regard, it is significant that

---

[9] At trial Mother's counsel argued, and in her brief on appeal, Mother again asserts that she did undergo a *hair* test for the purpose of detecting drugs in her system. The result of this test (which purportedly indicated that Mother tested negative for drugs) was attached to Mother's post-trial motion to amend the judgment and was appended to her brief on appeal. In response, Father argues that Mother did not preserve this sub-argument because she failed to make an adequate offer of proof at the hearing on the motion for sanctions. The contention is unpreserved for the additional reason that "[i]t is plainly outside the scope of" his point relied on. *See Kissinger v. Am. Family Mut. Ins. Co.*, 563 S.W.3d 765, 780 n.10 (Mo. App. W.D. 2018).

Father also contends on appeal that a hair test is not as reliable as a nail follicle test, which is why a nail test was requested in the first place. In the absence of any expert testimony in the record regarding the efficacy of the various tests, the circuit court was not in a good position to assess the relative strengths and weaknesses of different methods of drug-testing, and neither are we. We do observe, however, that the circuit court ordered Mother to undergo a "9 panel nail testing for illegal drugs, prescription drugs, alcohol and controlled substances[,]" and that Mother was not at liberty to choose a different drug testing method without obtaining the court's permission.

14

the GAL *joined* in Father's motion for sanctions.  We would note finally that the GAL (who, again, was charged with advancing the best interests of the parties' child) proposed a parenting plan which the circuit court ultimately adopted.

The trial judge found, and we agree, that Mother's persistent evasion and inaction in the face of a specific order from the circuit court represented a deliberate and contumacious disregard for the authority of the court.  The judge found further that Mother's refusal to provide complete discovery hindered Father's trial preparation given that Mother's suspected drug abuse was a core issue affecting the best interests of the parties' child.  We afford considerable deference to the circuit court's choice as to which sanctions to impose as punishment for a party's failure to comply with a discovery order.[10]  Here, the sanctions imposed by the trial judge were specifically authorized by Rule 61.01(d)(1)-(2).  Mindful of our scope of review, we cannot say that the court's decision to strike Mother's pleadings and prohibit her from presenting evidence at the modification trial was "clearly against the logic of the circumstances then before the court" or "so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Frawley*, 597 S.W.3d at 752.  Point I is denied.[11]

---

[10] "The most deferential standard of review, the abuse of discretion standard, severely limits the power of the appellate court to reverse or otherwise alter the rulings of the lower court." *In re Marriage of Stephens*, 954 S.W.2d 672, 678 n.3 (Mo. App. S.D. 1997) (quoting Thomas A. Sheehan, *Standard of Review on Appeal*, Vol. 53, Journal of The Missouri Bar, No. 5, p. 281)).

[11] Mother also contends that she "was afforded no opportunity to present witnesses or to testify herself" on the drug-testing issue.  Again, this claim of error is not preserved for our review because it is not fairly encompassed by the point relied on. *See Fessler v. McGovern*, 524 S.W.3d 208, 214 n.4 (Mo. App. W.D. 2017).  Additionally, we find nothing in the transcript to support Mother's assertion.  The modification judgment specifically states that Mother "was not precluded from offering evidence at the sanctions hearing."  The transcript reflects that Mother arrived late for the trial and while the hearing on Father's motion for sanctions was in progress.  Upon her arrival, the court stated from the bench, "All right, if there's nothing further, I'm going to rule."  In other words, the circuit court indicated that it was prepared to rule on Father's motion *unless* the parties wished to present additional arguments or evidence.

15

In her second point, Mother contends that the circuit court erred in admitting as exhibits certain medical records because the records contained hearsay as well as evidence that existed at the time of the original judgment (rather than evidence that arose after entry of that judgment). Whether to admit or exclude evidence is a determination committed to the sound discretion of the circuit court. *Margolis v. Steinberg*, 242 S.W.3d 394, 397 (Mo. App. E.D. 2007). The circuit court's "evidentiary rulings will not be disturbed absent an abuse of discretion." *Id*.

Here, we are unable to determine whether the circuit court abused its discretion in admitting the purportedly objectionable exhibits because they have not been included in the record on appeal. "If original exhibits are necessary to the determination of any point relied on, they shall be deposited in the appellate court by the appellant." *City of Kansas City v. Cosic*, 540 S.W.3d 461, 464 (Mo. App. W.D. 2018) (quoting Rule 81.16(a)). "Where ... exhibits are not made a part of the record on appeal, such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appeal." *Id*. (citation omitted). And where documents necessary to evaluate a claim of error are not made a part of the record before the Court, appellate review is impossible. *Id*. Accordingly, Point II is dismissed.

### Conclusion

The judgment of the circuit court is affirmed.

/s/ *Thomas N. Chapman*
Thomas N. Chapman, Judge

All concur.

16